UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

    Plaintiff,

and

JANE DOE,

    Plaintiff-Intervenor,

v.                                       CIVIL ACTION NO. 5:23-cv-00623

WAL-MART STORES EAST, L.P.,

    Defendant,

and

JAMES BOWYER,

    Defendant-Intervenor.

## MEMORANDUM OPINION AND ORDER

Pending are (1) Defendant Wal-Mart Stores East, L.P.'s ("Walmart") Partial Motion to Dismiss [Doc. 27], filed January 10, 2024, (2) Intervenor-Defendant James Bowyer's ("Mr. Bowyer") Motion to Dismiss [Doc. 29], filed January 17, 2024, and (3) Walmart's Motion to Disregard New Evidence and Argument or, in the Alternative, to File a Sur-Reply ("Motion to Disregard") [Doc. 35], filed January 26, 2024.[1]  On January 24, 2024, Intervenor-Plaintiff ("Plaintiff" or "Ms. Doe") responded in opposition [Doc. 34] to Walmart's Partial Motion to

---

[1] Walmart filed its Motion to Disregard [Doc. 35] pursuant to a responsive pleading [Doc. 23] filed in connection with Intervenor-Plaintiff's Motion to Proceed Pseudonymously [Doc. 15]. On January 30, 2024, the Court granted Intervenor-Plaintiff's Motion to Proceed Pseudonymously. [Doc. 37]. The Court deems Walmart's Motion to Disregard as now moot and it is **DENIED**.

Dismiss [Doc. 27], to which Walmart replied [Doc. 38] on January 31, 2024. On January 31, 2024, Ms. Doe responded in opposition [Doc. 39] to Mr. Bowyer's Motion to Dismiss [Doc. 29], to which Mr. Bowyer replied [Doc. 40] on February 7, 2024. The matter is ready for adjudication.

# I.

On September 19, 2023, Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") instituted this action against Walmart "under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991" on behalf of Ms. Doe. [Doc. 1 at ¶ 1]. On December 5, 2023, Ms. Doe filed an Intervenor-Complaint ("Complaint") against Walmart and Mr. Bowyer. [Doc. 17]. Ms. Doe alleges federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1343, and 1345 and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367. [Doc. 17, ¶ 5].

Walmart operates stores in West Virginia, "including Walmart Supercenter No. 1499, located at 1976 Jefferson Street North, Lewisburg, West Virginia (the 'Lewisburg Store')." [*Id.* at ¶ 7]. Mr. Bowyer has been the store manager at the Lewisburg Store since March 13, 2010. [*Id.* at ¶ 11; Doc. 26 at 4, ¶ 11]. He has "the authority to hire, fire, promote, demote, take disciplinary action, authorize shift changes, make work assignments, and take other tangible employment actions concerning employees at the Lewisburg Store." [Doc. 17, ¶ 12]. Ms. Doe commenced work at the Lewisburg Store on or about January 28, 2021. [*Id.* at ¶ 17].

Prior to working at the Lewisburg Store, Ms. Doe worked for a Walmart vendor. [Doc. 17, ¶ 13]. She visited the Lewisburg Store often to replace stock, set up displays, and perform other functions. [*Id.*]. During one visit, Mr. Bowyer approached and encouraged her to apply at the Lewisburg Store. [*Id.*] She did so and was invited to the Lewisburg Store to interview for an Electronics Department position. [*Id.* at ¶ 15]. While waiting to interview, Mr. Bowyer approached

her and offered to become her "sugar daddy," an offer she flatly declined, and which he continued to offer during her employment. [*Id.* at ¶¶ 15, 16]. From this point -- January 2021 -- and throughout her subsequent employment, Mr. Bowyer subjected her to other "continuing, unwelcome, and offensive harassment," including repeatedly requesting to see her breasts. [*Id.* at ¶ 22].

After Ms. Doe began working as a Sales Associate in the Lewisburg Store Electronics Department in January 2021, she was named a Sales Associate in the Automotive Department on March 27, 2021. [*Id.* ¶ 17, 19]. On March 12, 2022, she was promoted to a Fuel Department Manager position. [*Id.* at ¶ 20].

Sometime between March 12 and August 27, 2022, Mr. Bowyer interviewed Ms. Doe for a Team Lead position in the Apparel Department. [*Id.* at ¶ 21]. Mr. Bowyer told her the work hours were 6:00 a.m. to 3:00 p.m., although the position's traditional hours were 4:00 a.m. to 1:00 p.m. [*Id.*]. Ms. Doe accepted the promotion with the promised hours in August 2022, as she is a mother of two young children. [*Id.*]

Shortly after accepting, she was told by Walmart's Human Resources employees her hours would be 4:00 a.m. to 1:00 p.m. [*Id.* at 23]. She called Mr. Bowyer on September 12, 2022, to protest. [*Id.* at ¶ 24]. Mr. Bowyer invited her to his office. [*Id.*] More "unwelcome, offensive conduct" ensued, including his tying her shift change to (1) showing him her breasts (which she reluctantly did), (2) groping and putting his mouth on her breasts, (3) approaching her from behind and pressing his clothed genitals against her back, (4) putting his hand in her pants and attempting to touch her genitals, (5) blocking her from exiting the office, (6) offering to show her his genitals, and (7) requiring her to perform oral sex on him. [*Id.* at ¶ 24(a)-(h)]. Ms. Doe learned later that day her shift time was changed to 6:00 a.m. to 3:00 p.m. [*Id.* at ¶ 24(k)].

On at least one occasion following the September 12, 2022, assault, Mr. Bowyer offered to pay Ms. Doe $200 if she would again perform oral sex. [*Id.* at ¶ 25]. She refused. [*Id.*]. He also offered to provide her with another favorable employment privilege if she again showed him her breasts. [*Id.* at 26]. She refused. [*Id.*]

On September 29, 2022, Ms. Doe reported the harassment to Lewisburg Store employee Frieda Bishop, who then reported it to Walmart. [*Id.* at ¶¶ 27, 28]. On October 4, 2022, Mr. Bowyer reported to Walmart he was the subject of a harassment complaint by Ms. Doe. [*Id.* at ¶ 31]. Ms. Doe asserts she was but one of many female employees who complained to Walmart about Mr. Bowyer's sexual harassment. [Id. at ¶ 33].

Ms. Doe asserts she suffers post-traumatic stress disorder ("PTSD") from the misconduct and is troubled by seeing Mr. Bowyer at work. [*Id.* at ¶ 34]. Ms. Doe's counsel asked Walmart to suspend Mr. Bowyer pending investigation, but it declined. [*Id.*]. Ms. Doe then sought leave under the Family Medical Leave Act ("FMLA"). [*Id.*]. She last physically attended work on October 12, 2022. [*Id.*]. She ultimately exhausted all of her paid leave time. [*Id.* at ¶ 35]. She then applied for both short-term disability and workers' compensation benefits, but both were denied. [*Id.* at ¶ 36].

On October 18, 2022, Ms. Doe's lawyer delivered a statement to Walmart detailing Mr. Bowyer's harassment and noting other female employees were victimized by him. [*Id.* at ¶¶ 37, 38]. Despite this, Walmart 1) never interviewed Ms. Doe, [*Id.* at ¶ 39], 2) never inquired with her about the other female employees, [*Id.* at ¶ 40], 3) never informed her of the investigation outcome, [*Id.* at 41], 4) failed to remove Mr. Bowyer pending investigation, [*Id.* at ¶ 42], and 5) never disciplined him [*Id.*].

Ms. Doe now alleges multiple federal and state claims against Walmart and Mr. Bowyer, with the ones presently in controversy as follows: (1) Count II (Walmart) -- Retaliatory

discharge in violation of the West Virginia Human Rights Act ("WVHRA"), *West Virginia Code* section 5-11-1 *et seq.*, the West Virginia Workers Compensation Act ("WVWCA"), *West Virginia Code* § 23-1-1 *et seq.*, and common law, (2) Count III (Walmart and Mr. Bowyer) -- assault, (3) Count IV (Walmart and Mr. Bowyer) -- battery, (4) Count V (Walmart) -- negligent retention.

## II.

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Any defense presented under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Thus, the motion to dismiss must be filed before any answer to the complaint is filed. Additionally, and as an aside, any answer must be filed within twenty-one days of the issuance of the summons, except for situations wherein that timeline is enlarged by the court. Fed. R. Civ. P. 12(a).

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th

Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"
>
> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and

then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 678–79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### III.

#### A.    Introduction

Walmart moves to dismiss Ms. Doe's (1) Count II retaliation claims under the WVWCA and common law, (2) Count III assault claim, (3) Count IV battery claim, and (4) Count V negligent retention claims. [Doc. 27 at 1]. Mr. Bowyer moves to dismiss Ms. Doe's (1) Count III assault claim, and (2) Count IV battery claim.

##### 1.    Count II -- Common Law Retaliation Claim

Ms. Doe now concedes her common-law retaliation claim is preempted by the West Virginia Human Rights Act. The Court **GRANTS** Walmart's Motion to Dismiss the claim.

##### 2.    Count II -- WVWCA Retaliation Claim

Walmart asserts Ms. Doe's WVWCA retaliation claim fails to allege either (1) a covered, physical, on-the-job injury, or (2) that her workers' compensation claim was a significant

7

factor in Walmart's termination decision. [Doc. 27 at 1].

The WVWCA provides: "No employer shall discriminate . . . against any . . . present or former employees because of . . . [the] receipt of *or attempt to* receive benefits under this chapter." W. Va. Code § 23-5A-1 (emphasis added). The Supreme Court of Appeals of West Virginia has observed as follows:

> In order to make a prima facie case of discrimination under W. Va. Code, 23–5A–1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act . . . ; and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee.

Syl. Pt. 1, *Powell v. Wyoming Cablevision, Inc.*, 184 W. Va. 700, 701, 403 S.E.2d 717, 718 (1991).

Respecting the first element, Walmart contends the prescribed "on-the-job injury" must be compensable under West Virginia workers' compensation law. [Doc. 28 at 8]. The contention does not withstand minimal scrutiny. First, section 23-5A-1 does not include the "compensable" modifier. Second, *West Virginia Code* section 23-5A-3 -- just two sections over in the *Code* -- does include the term. W. Va. Code § 23-5A-3 ("It shall be a discriminatory practice . . . to terminate an injured employee while the injured employee is off work due to a compensable injury."). Additional analyses support the conclusion, but the foregoing textual analysis suffices. There need not be a "compensable injury" to support a *Powell* claim.

Only the third element remains in controversy. The Supreme Court of Appeals has observed as follows:

> [I]n a case premised on an alleged violation of a statute purposed to counter retaliation or other discrimination, we must keep in mind that those engaged in such conduct rarely broadcast their intentions to the world. Rather, employers who practice retaliation may be expected to seek to avoid detection, and it is hardly to be supposed that they will not try to accomplish their aims by subtle rather than obvious methods . . . . Moreover, employers are vested with considerable discretion in the hiring and firing of their employees so as to maintain an efficient and productive work force, and the visible manifestations of even a most improperly

> motivated discharge may be difficult to sort out from a nonretaliatory exercise of this discretion.

*Powell*, 184 W. Va at 704, 403 S.E.2d at 721 (cleaned up). The decision in *Powell* additionally articulates a non-exhaustive list of factors courts consider in examining the possible nexus between a claim filing and a retaliatory act: 1) proximity between filing and firing, 2) work performance and evaluations prior to the injury, and 3) evidence of an actual pattern of harassing conduct between submission of the claim and discharge. *See id.*

Walmart asserts Ms. Doe "has alleged no facts tying her termination to her workers' compensation filing." And, candidly, Ms. Doe concedes, in at least one particular, her complaint lacks necessary allegations for the claim. [Doc. 34 at 6].

In view of this concession, and to assure the necessary plausibility allegations, the Court **GRANTS** Walmart's Motion to Dismiss the Count II WVWCA claim. Dismissal is without prejudice. Ms. Doe may replead the claim with an amended complaint filed according to the governing time period under *Federal Rule of Civil Procedure* 15.

**3. Count III -- Assault; Count IV -- Battery; and Count V -- Negligent Retention**

In support of its Motion to Dismiss Ms. Doe's various tort claims, Walmart next asserts "Plaintiff-Intervenor fails to state claims for common law . . . assault (Count III), battery (Count IV), and negligent retention (Count V) because these claims are preempted by the 'sweeping immunity' of the [WVWCA], except in narrow circumstances not pled or applicable here." [Doc. 27 at 2].

Mr. Bowyer likewise moves to dismiss Ms. Doe's assault (Count III) and battery (Count IV) claims. [Doc. 29 at 1; Doc. 30 at 1]. Mr. Bowyer asserts he is immune pursuant to *West Virginia Code* section 23-2-6a inasmuch as, by pleading vicarious liability and failing to plead

9

"deliberate intent," "Plaintiff-Intervenor fails to state a claim for which relief may be granted under W. Va. Code § 23-4-2(d)(2)(A)." [Doc. 29 at 2-3]. That subsection provides as follows:

> (2) The immunity from suit provided under this section and under sections six and six-a, article two of this chapter may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention". This requirement may be satisfied only if:
>
>> (A) It is proved that the employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of: (i) Conduct which produces a result that was not specifically intended; (ii) conduct which constitutes negligence, no matter how gross or aggravated; or (iii) willful, wanton or reckless misconduct . . . .

W. Va. Code § 23-4-2(d)(2)(A).

Walmart's contention, at least, involves a difficult mix of questions that, at a minimum, will require a close comparison of existing caselaw with the precise factual circumstances here presented. Depending upon how the analyses turn in the decision-making process, the questions may morph into those of a first-impression dimension.

The matters are thus best left for resolution at the summary judgment stage of the case, following development of a settled and complete evidentiary record. The motions to dismiss on the aforementioned grounds are thus **DENIED** without prejudice to being raised anew at summary judgment.

### IV.

Based upon the foregoing discussion, Mr. Bowyer's Motion to Dismiss [**Doc. 29**] is **DENIED** and Walmart's Motion to Dismiss [**Doc. 27**] is **GRANTED** in part and **DENIED** in part. Ms. Doe is directed to file an amended complaint, as directed, in accordance with the time period prescribed in Rule 15.

The Clerk is directed to transmit a copy of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: July 30, 2024

Frank W. Volk
United States District Judge