UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

    Plaintiff,

and

JANE DOE,

    Plaintiff-Intervenor

vs.                                                                     Civil Action No. 5:23-cv-00623

WAL-MART STORES EAST, L.P., and
JAMES BOWYER,

    Defendants.

### **PLAINTIFF-INTERVENOR'S FIRST AMENDED COMPLAINT**

Plaintiff-Intervenor Jane Doe ("Plaintiff-Intervenor") hereby files, pursuant to leave granted by this Court by order dated July 30, 2024 (Dkt. 91), this first amended complaint ("FAC") against defendants Wal-Mart Stores East, L.P. ("Defendant Walmart") and James Bowyer ("Defendant Bowyer") (collectively, the "Defendants"). The only substantive changes to the original complaint made in this FAC are that Plaintiff-Intervenor has removed her claims for common law retaliation, retaliation for filing a claim for disability, and retaliation pursuant to the West Virginia Workers' Compensation Act. All of these causes of action were contained in Count II of the original complaint.

### **PARTIES**

1.    Plaintiff-Intervenor is, and at all times relevant to this FAC has been, a resident, citizen and domiciliary of the state of West Virginia. Plaintiff-Intervenor is a former employee of Defendant Walmart.

2. Upon information and belief, plaintiff U.S. Equal Opportunity Commission ("Plaintiff EEOC") is an agency of the United States that is charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964 ("Title VII") and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

3. Defendant Walmart is a Delaware limited partnership. WSE Management, LLC is the general partner, and WSE Investment, LLC is the limited partner of Defendant Walmart. Walmart Stores East, LLC, an Arkansas limited liability company, is the sole member of WSE Management, LLC and WSE Investment, LLC. Walmart, Inc., a Delaware corporation, is the sole member of Wal-Mart Stores East, LLC. Thus, Defendant Walmart is an indirect, wholly-owned subsidiary of Walmart, Inc. Thus, for diversity purposes, Defendant Walmart is a resident, citizen and domiciliary of the state of Delaware. Defendant Walmart's principal place of business is located in Bentonville, Arkansas.

4. Defendant Bowyer is, and at all times relevant to this FAC has been, a resident, citizen and domiciliary of the Commonwealth of Virginia. At all times relevant to this FAC, Defendant Bowyer was the manager of a retail store located in Lewisburg, West Virginia, that is owned and operated by Defendant Walmart.

**JURISDICTION AND VENUE**

5. This Court has federal question subject-matter jurisdiction of this matter pursuant to the provisions of 28 U.S.C. §§ 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. This Court has supplemental jurisdiction of the state law claims made herein pursuant to 28 U.S.C.

§ 1367.  Even if the United States were not a party, this Court would have diversity of citizenship subject-matter jurisdiction because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds seventy-five thousand dollars ($75,000).  This Court has personal jurisdiction over Defendants because they conduct business in the state of West Virginia, their acts and omissions complained of herein occurred in the state of West Virginia, and they otherwise meet the minimum contacts test for personal jurisdiction of this Court.

6.     Pursuant to 28 U.S.C. § 1391, venue of this legal action is proper with this Court because Defendants are subject to the Court's personal jurisdiction, and the events or omissions giving rise to the claims contained herein occurred in the Southern District of West Virginia.

**FACTS**

7.     At all times relevant to this FAC, Defendant Walmart has operated a chain of merchandise stores in West Virginia and other states, including Walmart Supercenter No. 1499, located at 1976 Jefferson Street North, Lewisburg, West Virginia (the "Lewisburg Store").

8.     At all times relevant to this FAC, Defendant Walmart has continuously been doing business in the state of West Virginia and the city of Lewisburg, West Virginia, and has continuously had at least fifteen (15) employees.

9.     At all times relevant to this FAC, Defendant Walmart has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

10.    During calendar years 2020, 2021, 2022, and 2023, Defendant Walmart continuously employed more than 500 employees.

11.    Since no later than March 13, 2010, Defendant Bowyer, a male, has been the Store Manager at the Lewisburg Store.

12. Upon information and belief, in his capacity as a Store Manager at the Lewisburg Store, whether acting alone or in concert with other of Defendant Walmart's employees, Defendant Bowyer has possessed, and continues to possess, the authority to hire, fire, promote, demote, take disciplinary action, authorize shift changes, make work assignments, and take other tangible employment actions concerning employees at the Lewisburg Store.

13. Prior to her employment with Defendant Walmart, Plaintiff-Intervenor, a female, regularly visited the Lewisburg Store in her capacity as an employee of another company. Plaintiff-Intervenor worked for one of Defendant Walmart's vendors, and she was often in the Lewisburg Store replacing stock, setting up displays, and performing other functions for her employer. Plaintiff-Intervenor first met Defendant Bowyer during one such visit. Defendant Bowyer was cordial to Plaintiff-Intervenor prior to her employment with Defendant Walmart. In fact, he encouraged her to apply for a position with Defendant Walmart because he could see that she was a good worker.

14. Plaintiff-Intervenor subsequently applied for employment with Defendant Walmart, but she did not go through Defendant Bowyer or even ask for his help. Plaintiff-Intervenor applied for employment in the conventional manner through Defendant Walmart's website.

15. Defendant Walmart's employee, James Cales ("Cales"), who held a position called a "Team Lead" in the electronics department at the Lewisburg Store, interviewed Plaintiff-Intervenor for a position.

16. While Plaintiff-Intervenor was waiting for her interview with Cales, Defendant Bowyer approached her and offered to become her "sugar daddy." Plaintiff-Intervenor declined Defendant Bowyer's offer.

17. On or about January 28, 2021, Plaintiff-Intervenor began working as a Sales Associate in the electronics department at the Lewisburg Store.

18. As Team Lead, Cales supervised Plaintiff-Intervenor while she was a Sales Associate in the electronics department.

19. On or about March 27, 2021, Plaintiff-Intervenor transferred to a new position as a Sales Associate in the automotive department at the Lewisburg Store.

20. On or about March 12, 2022, Plaintiff-Intervenor transferred to a new position as the Fuel Department Manager at the Lewisburg Store's fuel station.

21. On or about August 27, 2022, Plaintiff-Intervenor transferred to a new position as a Team Lead in the apparel department at the Lewisburg Store. Defendant Bowyer interviewed Plaintiff-Intervenor for this position, and she accepted it based upon the understanding that her work hours would be 6:00 a.m. to 3:00 p.m. Previous work hours for this position were 4:00 a.m. to 1:00 p.m., which as the mother to two young children was not acceptable to Plaintiff-Intervenor.

22. Beginning in January 2021 and continuing throughout her employment, Defendant Walmart, acting through Defendant Bowyer, subjected Plaintiff-Intervenor to continuing, unwelcome, and offensive harassment because of her sex (female), including the following:

   a. Defendant Bowyer repeatedly offered Plaintiff-Intervenor his services as her "sugar daddy," which Plaintiff-Intervenor understood to mean that Defendant Bowyer would provide financial resources and beneficial treatment to her in exchange for her agreement to enter into a sexual relationship. Plaintiff-Intervenor refused Defendant Bowyer's offers.

   b. Defendant Bowyer repeatedly told Plaintiff-Intervenor that he wanted to see her breasts and offered her money to show him her breasts. Plaintiff-Intervenor refused Defendant Bowyer's offers. Before Plaintiff-Intervenor became a Team Lead, Defendant Bowyer told Plaintiff-Intervenor that she could show her breasts to him or to the two other management-level employees hiring for the Team Lead position if she ever "needed anything."

5

23. Shortly after accepting the position as Team Lead in the apparel department, Plaintiff-Intervenor was informed by a human resources employee that her hours would be 4:00 a.m. to 1:00 p.m.

24. On or about September 12, 2022, Plaintiff-Intervenor called or texted Defendant Bowyer to protest the working hours, as she accepted the position on the basis that the hours would be 6:00 a.m. to 3:00 p.m. Defendant Bowyer, in his capacity as Store Manager, brought Plaintiff-Intervenor into his office at the Lewisburg Store, where no one else was present, and subjected her to the following unwelcome, offensive conduct:

    a. Defendant Bowyer demanded that Plaintiff-Intervenor show him her breasts as a condition of her employment, i.e., to receive a shift change that she was previously told she would receive. Plaintiff-Intervenor was highly offended but reluctantly complied with Defendant Bowyer's demand.

    b. Defendant Bowyer, without Plaintiff-Intervenor's consent and against her will, groped and put his mouth on her breasts. Plaintiff-Intervenor responded by pushing Defendant Bowyer away.

    c. Defendant Bowyer, without Plaintiff-Intervenor's consent and against her will, approached Plaintiff-Intervenor from behind and pressed his body, including his clothed genitals, against her back.

    d. Defendant Bowyer, without Plaintiff-Intervenor's consent and against her will, groped Plaintiff-Intervenor's breasts and put his hand in her pants, attempting to touch her genitals.

    e. In response to Defendant Bowyer's aforementioned conduct, Plaintiff-Intervenor attempted to leave his office, but Defendant Bowyer physically cornered her, blocking her from exiting the room.

    f. Defendant Bowyer then asked Plaintiff-Intervenor if she wanted to see his genitals, and Plaintiff-Intervenor told him "No."

    g. Defendant Bowyer then asked Plaintiff-Intervenor to put his genitals in her mouth, and Plaintiff-Intervenor told him "No."

    h. Having isolated and cornered Plaintiff-Intervenor, Defendant Bowyer then persisted in his demand, and by his contemporaneous and past statements

        and conduct, he pressured Plaintiff-Intervenor into compliance with his demand that she perform oral sex on him.

   i.    Fortunately, Plaintiff-Intervenor received a call on her radio from a fellow Team Lead who needed her. This gave Plaintiff-Intervenor an excuse to get out of Defendant Bowyer's office.

   j.    Defendant Walmart changed Plaintiff-Intervenor's shift time to 6:00 a.m. to 3:00 p.m.

   k.    Later the same day, Defendant Bowyer informed Plaintiff-Intervenor that her shift time had changed to 6:00 a.m. to 3:00 p.m.

25. On one occasion after September 12, 2022, Defendant Bowyer offered to pay Plaintiff-Intervenor $200 if she would perform oral sex on him. Plaintiff-Intervenor refused, finding his statement and conduct unwelcome and offensive.

26. On one occasion after September 12, 2022, Defendant Bowyer offered to provide Plaintiff-Intervenor with another term, condition, or privilege of employment (a special allowance to eliminate unsold clearance inventory from her department) if she showed him her breasts by the end of the day. Plaintiff-Intervenor refused, finding his statement and conduct unwelcome and offensive.

27. On or about September 29, 2022, Plaintiff-Intervenor reported that she had experienced sexual harassment at the Lewisburg Store to Freda Bishop ("Bishop"), an employee of Defendant Walmart.

28. On or around September 29, 2022, Bishop reported Plaintiff-Intervenor's complaint to Defendant Walmart.

29. Shortly thereafter, a human resources employee of Defendant Walmart, Aaron Mulhern ("Mulhern"), contacted Plaintiff-Intervenor to discuss her complaint. Mulhern informed

Plaintiff-Intervenor that Defendant Walmart would investigate her complaint and interview her. Plaintiff-Intervenor told Mulhern she was considering retaining legal counsel.

30. Shortly thereafter, Plaintiff-Intervenor notified Mulhern that she had retained legal counsel.

31. Defendant Walmart knew that Defendant Bowyer was the subject of Plaintiff-Intervenor's sexual harassment complaint no later than October 4, 2022.

32. On or before October 4, 2022, Defendant Bowyer reported to Defendant Walmart that Plaintiff-Intervenor had told others that he was the subject of her sexual harassment complaint.

33. Prior to Plaintiff-Intervenor's September 2022 report of sexual harassment, one or more female employees had made complaints to Defendant Walmart of Defendant Bowyer's sexually harassing conduct.

34. Plaintiff-Intervenor suffered great emotional harm from Defendant Bowyer's harassment. She was diagnosed with post-traumatic stress disorder and had a difficult time working. Plaintiff-Intervenor's counsel requested that Defendant Walmart suspend Defendant Bowyer while the investigation was continuing, but Defendant Walmart refused. Plaintiff-Intervenor could not continue working if she had to see Defendant Bowyer every day. She applied for leave pursuant to the Family Medical Leave Act. Plaintiff-Intervenor's last day of employment was October 12, 2022, and her leave commenced on or about October 14, 2022.

35. Plaintiff-Intervenor used all of her accumulated paid time off during her leave.

36. Plaintiff-Intervenor applied for short-term disability and Workers Compensation benefits. Both were denied.

37. On or about October 18, 2022, Plaintiff-Intervenor, through her legal counsel, provided a statement to Defendant Walmart detailing Defendant Bowyer's harassment.

38. In her statement, Plaintiff-Intervenor stated that there were several other female employees who said that Defendant Bowyer had sexually harassed them.

39. Defendant Walmart never interviewed Plaintiff-Intervenor about her sexual harassment complaint against Defendant Bowyer.

40. Defendant Walmart never asked Plaintiff-Intervenor or her counsel to identify the other female employees who said that Defendant Bowyer sexually harassed them.

41. Defendant Walmart never informed Plaintiff-Intervenor or her counsel about the outcome of any investigation of her complaint against Defendant Bowyer.

42. At no time did Defendant Walmart ever take disciplinary action against Defendant Bowyer for sexual harassment against Plaintiff-Intervenor or even temporarily remove him from the workplace pending investigation.

43. On or about January 13, 2023, Plaintiff-Intervenor filed her charge of discrimination against Defendant Walmart with Plaintiff EEOC.

44. On or about January 13, 2023, Defendant Walmart received notice from the Plaintiff EEOC that Plaintiff-Intervenor had filed the charge of discrimination.

45. On or about January 17, 2023, Defendant Walmart obtained Plaintiff-Intervenor's charge of discrimination.

46. On or about January 19, 2023, Defendant Walmart discharged Plaintiff-Intervenor from her employment.

47. Plaintiff EEOC investigated Plaintiff-Intervenor's charge of discrimination, and Plaintiff-Intervenor fully complied with that investigation

48. On June 28, 2023, Plaintiff EEOC issued to Defendant Walmart an administrative determination finding reasonable cause to believe that Defendant Walmart violated Title VII by

subjecting Plaintiff-Intervenor to a hostile work environment because of sex (female) and discharge because of sex (female) and retaliation (opposition, participation), and further finding reasonable cause to believe that Defendant Walmart subjected a class of female employees to an ongoing hostile work environment because of sex (female). Plaintiff EEOC invited Defendant Walmart to join with Plaintiff EEOC in informal methods of conciliation to endeavor to eliminate the discriminatory practices and to provide appropriate relief.

49. Plaintiff EEOC engaged in communications with Defendant Walmart to provide Defendant Walmart the opportunity to remedy the discriminatory practices described in the administrative determination.

50. Defendant Walmart did not respond to Plaintiff EEOC's conciliation communications, and Plaintiff EEOC was unable to secure from Defendant Walmart a conciliation agreement acceptable to Plaintiff EEOC.

51. On July 27, 2023, Plaintiff EEOC issued to Defendant Walmart a Notice of Failure of Conciliation.

52. All conditions precedent to the institution of this lawsuit have been fulfilled.

### Count I

### Hostile Work Environment Because of Sex

**42 U.S.C. § 2000e-2(a)**
**West Virginia Human Rights Act, W.Va. Code § 5-11-1 et seq.**

### Defendant Walmart

53. For Count I of this FAC, paragraphs 1-52 of this FAC are incorporated herein by reference as though fully restated herein.

54. Defendant Walmart subjected Plaintiff-Intervenor to unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) and the West Virginia Human Rights Act in the form of a hostile work environment because of her sex (female).

55. The harassing conduct described in detail herein was unwelcome, sex-motivated, and both subjectively and objectively hostile or abusive, thereby altering the terms and conditions of Plaintiff-Intervenor's employment.

56. Defendant Walmart had actual and constructive notice of Defendant Bowyer's sexually harassing conduct and failed to take prompt action reasonably calculated to ending the harassment and preventing its recurrence.

57. Defendant Walmart is vicariously liable for the harassing conduct of its supervisory employee, Defendant Bowyer.

58. The harassing conduct and unlawful employment practices described in detail herein have had the effect of depriving Plaintiff-Intervenor of equal employment opportunities and to otherwise adversely affect her status as an employee because of her sex (female).

59. The harassing conduct and unlawful employment practices described in detail herein were intentional.

60. The harassing conduct and unlawful employment practices described in detail herein were done with malice or with reckless indifference to Plaintiff-Intervenor's rights.

61. As a direct and proximate result of the harassing conduct and unlawful employment practices described in detail herein, Plaintiff-Intervenor has suffered actual harm and is entitled to damages, including but not limited to damages for expenses incurred, loss of income, substantial mental anguish, physical and mental pain and suffering, loss of consortium, emotional distress, aggravation, annoyance, inconvenience, and punitive damages.

## Count II

### Discharge in Retaliation for Engaging in Protected Activity and Because of Sex

### 42 U.S.C. §§ 2000e-3(a), 2000e-2(a) West Virginia Human Rights Act, W.Va. Code § 5-11-1 et seq.

### Defendant Walmart

62. For Count II of this FAC, paragraphs 1-61 of this FAC are incorporated herein by reference as though fully restated herein.

63. Defendant Walmart discharged Plaintiff-Intervenor from her employment because of her opposition to Defendant Bowyer's sexually harassing conduct, including her initial report of sexual harassment, subsequent communications, and retention of legal counsel.

64. Defendant Walmart discharged Plaintiff-Intervenor from her employment because of her initiation of Title VII administrative agency proceedings, including the filing of a charge of discrimination with Plaintiff EEOC.

65. Defendant Walmart discharged Plaintiff-Intervenor from her employment because of her sex (female).

66. The harassing conduct and unlawful employment practices described in detail herein have had the effect of depriving Plaintiff-Intervenor of equal employment opportunities and to otherwise adversely affect her status as an employee because of her sex (female).

67. The harassing conduct and unlawful employment practices described in detail herein were intentional.

68. The harassing conduct and unlawful employment practices described in detail herein were done with malice or with reckless indifference to Plaintiff-Intervenor's rights.

69. As a direct and proximate result of the harassing conduct and unlawful employment practices described in detail herein, Plaintiff-Intervenor has suffered actual harm and is entitled to damages, including but not limited to damages for expenses incurred, loss of income, substantial mental anguish, physical and mental pain and suffering, loss of consortium, emotional distress, aggravation, annoyance, inconvenience, and punitive damages.

## COUNT III

## ASSAULT

### (All Defendants)

70. For Count III of this FAC, paragraphs 1-69 of this FAC are incorporated by reference as though fully restated herein.

71. As described in detail herein, Defendant Bowyer assaulted Plaintiff-Intervenor in his office on September 12, 2022.

72. Defendant Walmart is vicariously liable for Defendant Bowyer's actions.

73. Defendant Bowyer's actions were willful, wanton, intentional, malicious, and done with a callous and reckless disregard for Plaintiff-Intervenor's rights.

74. As a direct and proximate result of Defendant Bowyer's actions described in detail herein, Plaintiff-Intervenor suffered actual harm and is entitled to damages, including but not limited to damages for expenses incurred, loss of income, substantial mental anguish, physical and mental pain and suffering, loss of consortium, emotional distress, aggravation, annoyance, inconvenience and punitive damages.

## COUNT IV

## BATTERY

### (All Defendants)

75. For Count IV of this FAC, paragraphs 1-74 of this FAC are incorporated by reference as though fully restated herein.

76. As described in detail herein, Defendant Bowyer battered Plaintiff-Intervenor in his office on September 12, 2022.

77. Defendant Walmart is vicariously liable for Defendant Bowyer's actions.

78. Defendant Bowyer's actions toward Plaintiff-Intervenor on September 12, 2022 were willful, wanton, intentional, malicious, and done with a callous and reckless disregard for Plaintiff-Intervenor's rights.

79. As a direct and proximate result of the actions of Defendant Bowyer, as described in detail herein, Plaintiff suffered actual harm and is entitled to damages, including but not limited to damages for expenses incurred, loss of income, substantial mental anguish, physical and mental pain and suffering, loss of consortium, emotional distress, aggravation, annoyance, inconvenience and punitive damages.

## COUNT V

## NEGLIGENT RETENTION

### (Defendant Walmart)

80. For Count V of this FAC, paragraphs 1-79 of this FAC are incorporated by reference as though fully restated herein.

81. Upon information and belief, there have been other legitimate complaints made to Defendant Walmart about Defendant Bowyer prior to the commencement of Plaintiff-Intervenor's employment with Defendant Walmart and thereafter, including the complaint made on behalf of Plaintiff-Intervenor.

82. Defendant Walmart owed a legal duty to Plaintiff-Intervenor and to the general population to not retain an employee who, through his or her acts or omissions, might cause harm to other persons.

83. Defendant Walmart owed a legal duty to Plaintiff-Intervenor in that it knew that Plaintiff-Intervenor would be within the zone of foreseeable risk that was created by Defendant Bowyer.

84. Defendant Walmart breached the duty that it owed to Plaintiff-Intervenor by failing to use a reasonable standard of care in retaining Defendant Bowyer in a supervisory capacity.

85. Defendant Walmart breached its duty to Plaintiff by failing to adequately investigate complaints of Defendant Bowyer's sexual harassment, including the complaint made on behalf of Plaintiff-Intervenor.

86. Had Defendant Walmart adequately investigated the complaints about Defendant Bowyer's conduct, it would have either corrected his performance or terminated his employment long before he caused harm to Plaintiff and before he could cause further harm.

87. It was unreasonable for Defendant Walmart to retain Defendant Bowyer in light of information that it knew or should have known regarding his performance.

88. As a direct and proximate result of Defendant Walmart's negligence in retaining Defendant Bowyer, as described in detail herein, Plaintiff-Intervenor suffered actual harm and is entitled to damages, including but not limited to damages for expenses incurred, loss of income,

substantial mental anguish, physical and mental pain and suffering, loss of consortium, emotional distress, aggravation, annoyance, and inconvenience.

## **REQUEST FOR JUDGMENT, DAMAGES AND OTHER RELIEF**

**WHEREFORE**, Plaintiff-Intervenor respectfully requests judgment, damages and other relief against Defendants as follows:

1. Compensatory and general damages in an amount to be determined by the jury or other trier of fact at trial;

2. Punitive damages in an amount to be determined by the jury or other trier of fact at trial;

3. Attorneys' fees and all costs incurred by Plaintiff-Intervenor in pursuing this action;

4. Pre-judgment and post-judgment interest as permitted by law; and

5. Such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff-Intervenor demands a trial by jury on all issues so triable.

Respectfully submitted this 10th day of September 2024.

          JANE DOE,

          Plaintiff-Intervenor,

          BY COUNSEL:

/s/ Mark Burnette
_____

W. Mark Burnette
West Virginia Bar No. 6408
MARK BURNETTE, P.A.
Post Office Box 2913
Ocala, Florida 34478
T:  (352) 512-9807
E:  mark@burnettelegal.com


/s/ Jeffrey S. Rodgers
_____

Jeffrey S. Rodgers
ATTORNEY AT LAW
West Virginia Bar No. 6496
916 Washington St., W., Suite 1
Lewisburg, West Virginia 24901
T:	(304) 647-4550
F:	(304) 647-5587
E:	rodgerslawfirm@yahoo.com

## **CERTIFICATE OF SERVICE**

I, W. Mark Burnette, hereby certify that a copy of the foregoing "Plaintiff-Intervenor's First Amended Complaint" was served upon all other parties in this matter to their counsel of record electronically through the Court's CM/ECF system.

Served this 10th day of September 2024.

                JANE DOE,

                Plaintiff-Intervenor,

                BY COUNSEL:

                /s/ Mark Burnette
                _____
                W. Mark Burnette
                West Virginia Bar No. 6408
                MARK BURNETTE, P.A.
                Post Office Box 2913
                Ocala, Florida 34478
                T:  (352) 512-9807
                E:  mark@burnettelegal.com